IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| THERESE VERONICA NATTY, | : |
| Plaintiff, | : |
| VS. | : |
| | : 7 : 11-CV-27 (HL) |
| BARBARA WALRATH, *et al.*, | : |
| Defendants. | : |

## ORDER AND RECOMMENDATION

Plaintiff, who is proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 on February 28, 2011, raising allegations of excessive use of force by Defendants. (Doc. 2). Presently pending in this action are Defendants' Motion for Summary Judgment, and Plaintiff's Motion for Appointment of Counsel. (Docs. 32, 44).

### Background

In her Complaint, Plaintiff alleges that Defendant Sergeant T. Mitchell and Defendant Officer Eady forcefully pulled Plaintiff into Dorm #7 at Irwin County Detention Center on January 21, 2011. (Doc. 2). Plaintiff states that two unnamed men forced Plaintiff to lie face down on the concrete floor, pressed their knees into Plaintiff's back so hard that she could not breathe, and slammed her head into a concrete wall. Plaintiff also states that Defendant Mitchell tried to "pull out" Plaintiff's eyes with her finger. According to Plaintiff, Defendant Warden Barbara Walrath instructed non-party Dr. McMahn not to treat Plaintiff following the assault.

Plaintiff alleges that she was assaulted again on February 15, 2011. Plaintiff states that she was sprayed with pepper spray and unnamed individuals tried to break her right ring finger in the

cell door.

Defendants filed their Motion for Summary Judgment on January 19, 2012. (Doc. 32). On January 20, 2011, the Court notified Plaintiff of the filing of Defendants' Motion for Summary Judgment, advised her of her obligations under the law, and directed her to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 33). Plaintiff filed Responses to Defendants' Motion for Summary Judgment on January 30, 2012, and February 6, 2012. (Docs. 34, 37).

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The

movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.   "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it".   Fed R. Civ. P. 56(e)(3).

## Discussion

It appears Plaintiff was a pretrial detainee at all relevant times, and as such, conditions of confinement imposed on her were governed by the Fourteenth Amendment Due Process Clause. *Andujar v. Rodriquez*, 486 F.3d 1199, 1203 n. 3 (11th Cir. 2007).   "[T]he minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).   Therefore, for the purposes of the undersigned's analysis of Plaintiff's allegations, the Court will apply the Eighth Amendment standard.   *Id.*; *Vinson v. Clarke County, Ala.*, 10 F.Supp.2d 1282, 1293 (S.D. Ala., 1998).

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined."  *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003).   "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendants acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted.  *Fischer v. Ellegood*, 238 Fed. Appx. 428, 432 (11th Cir. 2007); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).   However, "[t]he 'core judicial inquiry'. . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7).   When the conduct in question resulted from an officer attempting to restore control after an inmate disturbance, an Eighth Amendment claim arises *only* if the measure taken "inflicted unnecessary and wanton pain and suffering" caused by force used "maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. at 320.

The Eleventh Circuit has held that there are five factors that are relevant to determine if force was used "maliciously and sadistically for the very purpose of causing harm".  *Hall v. Santa Rosa Correctional Institution*, 403 Fed. Appx. 479, 481 (11th Cir. 2010).   The five factors include:

> (1) the extent of the injury, (2) the need for application of force, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, (4) the relationship between the need and the amount of force used, and (5) any efforts made to temper the severity of a forceful response.

*Id.*; *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999).

The Court must give a "wide range of deference to prison officials acting to preserve

discipline and security."*Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Deference must also be given to prison officials who are required to make immediate decisions at the scene of a disturbance. *Id.* However, "once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment, and any abuse directed at a prisoner after [s]he terminates h[er] resistance to authority is an Eighth Amendment violation." *Williams v. Burton*, 943 F.2d 1572,1576 (11th Cir. 1991).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)) (emphasis in original). Herein, Defendants contend that summary judgment is appropriate in this case because the hands on force used was not excessive as it was used to maintain and restore discipline. (Doc. 32-1). Plaintiff maintains that Defendants injured her and blinded her, and thus they are not entitled to summary judgment. (Doc. 37).

**Evidence**

In asserting that they are entitled to summary judgment in regard to Plaintiff's Complaint, Defendants have submitted affidavits from the following Irwin County Detention Center employees: Calvin Campbell, Defendant Eady, Natasha McClain, Dr. Howard McMahan, Eunice Mitchell, Defendant Mitchell, Michael Mizell, Jennifer Brasher, Paul Brown,

5

Sakia Gaskin, Marteka George, Defendant Walrath, and Alicia Wynn.  (Doc. 32)[1].

*January 21, 2011 Incident*

Defendants' evidence shows that on January 21, 2011, Defendant Eady was told by Inmate Benitez that Plaintiff "took a swing at Benitez."  (Doc. 32-4, Eady Aff., ¶ 4).  Plaintiff was talking loudly and angrily about the other inmates, and stated that she did not want her roommate in her cell anymore.  (Doc. 32-5, McClain Aff., ¶ 5).  Defendant Mitchell was summoned and determined that Plaintiff needed to be moved "to another location in order to avoid a fight between the two inmates."  (Doc. 32-8, T. Mitchell Aff., ¶ 5).  Plaintiff was instructed by several officers to accompany Defendant Mitchell to Dormitory E-7, but Plaintiff refused.  (*Id.* at ¶ 6; *see e.g.* Docs. 32-3, Campbell Aff., ¶ 3; 32-4, Eady Aff., ¶ 5).  Plaintiff "demanded to see a superior officer". (Doc. 32-8, T. Mitchell Aff., ¶ 6).  Non-party Lieutenant Tucker arrived, and advised Plaintiff that he would speak with her once she obeyed orders; Plaintiff then complied and willingly moved to Dormitory E-7. (*Id.* at ¶ 7).

Once Plaintiff arrived at Dormitory E-7, Lt. Tucker, Defendant Eady, and Defendant Mitchell listened to Plaintiff's side of the story.  (*Id.* at ¶ 8).  Defendants Eady and Mitchell then requested Plaintiff enter Cell #114; Plaintiff "refused several requests to move into an individual cell."  (*Id.*; Doc. 32-4, Eady Aff., ¶ 7).  The Special Emergency Response Team ("SERT Team") was called to assist, and Defendants Eady and Mitchell each took one of

---

[1] The affidavits submitted in support of Defendants' Motion for Summary Judgment were not signed or notarized in the initial filing. However, on February 23, 2012, Defendants' filed the signed and notarized page of each affidavit. (Doc. 40).

6

Plaintiff's arms in an attempt to escort her into the cell.  (Docs. 32-8, T. Mitchell, Aff., ¶¶ 8-9; 32-4, Eady Aff., ¶ 7).  Plaintiff broke free and "took a swing" at Defendant Mitchell, and Defendants Mitchell and Eady secured Plaintiff's arms behind her back and lowered her to the floor "to regain control of" Plaintiff.  (Doc. 32-8, T. Mitchell Aff., ¶ 9).  Plaintiff broke free again and grabbed a vertical pole near the cell; Plaintiff wrapped her hands and arms around the pole.  (Docs. 32-4, Eady Aff., ¶ 8; 32-8, T. Mitchell Aff., ¶ 10).  While Defendants Eady and Mitchell attempted to pry Plaintiff from the pole, Plaintiff "swung an elbow" at Defendant Mitchell.  (Doc. 32-8, T. Mitchell Aff., ¶ 10).

The SERT Team arrived and assisted in regaining control of Plaintiff.  (*Id.* at ¶ 11).  Non-party SERT Officers Campbell and Mizell observed Plaintiff "swinging her elbows in an attempt to assault" Defendant Mitchell, they then took Plaintiff to the floor, and regained control of Plaintiff.  (Doc. 32-3, Campbell Aff., ¶¶ 4-5; 32-9, Mizell Aff., ¶¶ 4-5).  Once the SERT officers reached Plaintiff's cell, she began to resist again.  (*Id.*).  "In [their] attempts to regain control of [Plaintiff], [Campbell and Mizell] took her to the floor in her cell, and gave her several orders to stop resisting."  (*Id.* at ¶ 5).  Plaintiff advised the SERT officers that she had bumped her head, medical staff was notified, and a nurse came and assessed Plaintiff.  (*Id.* at ¶¶ 5-6).  Defendant Mitchell testified that she noticed a small amount of blood on Plaintiff's forehead, but when the nurse arrived Plaintiff refused treatment beyond the nurse wiping the blood off Plaintiff's forehead.  (Doc. 32-8, T. Mitchell Aff., ¶¶ 12-13).

Non-party Dr. Howard McMahan testified that he examined and assessed Plaintiff on January 21, 2011, after Plaintiff had allegedly been involved in an altercation with officers.

7

(Doc. 32-6, McMahan Aff., ¶ 3).   Plaintiff alleged that she was thrown into a wall, and had pain "all over".   (*Id.* at ¶ 4).   Plaintiff "complained of diminished vision in her right eye after 'blunt trauma'."   (*Id.*).   Dr. McMahan "noted abrasions to [Plaintiff's] left forehead and right lower eyelid, with subconjunctivial hemorrhage".   (*Id.* at ¶ 5).   Dr. McMahan testified that "[t]hese would be considered minor injuries that would resolve on their own even without any medical treatment."   (*Id.*).   The medical staff was advised to check Plaintiff's vital signs frequently, check her neurological signs, provide Tylenol or Advil as needed, and clean and treat her abrasions with ointment as necessary.   (*Id.* at ¶ 6).

On January 24, 2011, Dr. McMahan was informed that Plaintiff "continued to complain of dizziness, and a fear that she might black out."   (*Id.* at ¶ 7).   Plaintiff was taken to Irwin County Hospital for a CT scan to the head without contrast, and the results showed no acute intracranial findings or evidence of "blunt trauma".   (*Id.* at ¶ 9).   Dr. McMahan testified that Defendant Walrath "did not instruct [him], advise [him], or infer to [him] that [he] should not provide medical care and treatment to [Plaintiff]."   (*Id.* at ¶ 12).

*February 15, 2011 Incident*

Defendants' evidence also shows that Plaintiff was involved in another incident which required the use of hands on force on February 15, 2011.   (*See* Doc. 32).   Non-party Officer Wynn testified that on February 15, 2011 she was called to Dormitory E-7.   (Doc. 32-15, Wynn Aff., ¶ 4).   "Upon arriving, [Wynn] observed [Plaintiff] screaming in a loud voice" that she wanted to be moved from the facility.   (*Id.*).   Plaintiff was told to go to her cell, but she refused.   (*Id.* at ¶ 5).   "Instead, [Plaintiff] began to take all her clothing off while announcing that she was not going in her cell."   (*Id.*).   Plaintiff was told that officers were going to put her back in her cell if

8

she did not go voluntarily, and Plaintiff responded that she was not going anywhere, and the officers could do what they needed to do.  (Doc. 32-12, Gaskin Aff., ¶ 7).  Wynn placed a blanket around Plaintiff, and "advised all female officers present to assist with guiding [Plaintiff] to her cell."  (Doc. 32-15, Wynn Aff., ¶ 6).  Plaintiff proceeded to elbow, hit and/or scratch all of the staff involved.  (*Id.*).

When Defendant Walrath arrived in the pod, Plaintiff charged her, but was intercepted by several officers before reaching Defendant Walrath.  (Doc. 32-12, Gaskin Aff., ¶ 9).  Wynn gave the command to return Plaintiff to her cell, and non-party Officer Gaskin gently placed both hands, palms flat, on Plaintiff's stomach and walked her back to her cell.  (*Id.* at ¶ 10).  Plaintiff resisted staying in her cell, and struck Defendant Walrath with her shoe several times.  (*Id.* at ¶ 11; Doc. 32-14, Walrath Aff., ¶ 13).  Once Plaintiff was placed in her cell, she "grabbed hold of the doorway to her cell so that the other officers could not shut the cell door."  (Doc. 32-14, Walrath Aff., ¶ 14).  Plaintiff "refused multiple commands from the officers present to move her hand." (*Id.*; Doc. 32-10, Brasher Aff., ¶9).

In order to close the door without injuring Plaintiff, a supervisor commanded that O.C. (pepper) spray be used to gain the cooperation of Plaintiff.  (Docs. 32-14, Walrath Aff., ¶ 15; Doc. 32-15, Wynn Aff., ¶ 9).  Non-party Officer Brown applied a one (1) second spray of O.C. to Plaintiff's forehead area, Plaintiff removed her arm from the door, and the door was secured. (Doc. 32-11, Brown Aff., ¶ 10).

After the O.C. spray was used, Plaintiff complained of not being able to breathe, so Plaintiff was provided with her inhaler and was able to inhale one pump.  (Doc. 32-12, Gaskin Aff., ¶ 14). Once Plaintiff calmed down, medical staff and officers assisted in decontaminating Plaintiff and

9

helping her rinse her eyes.   (Docs. 32-15, Wynn Aff., ¶ 10; 32-10, Brasher Aff., ¶ 10).   The decontamination procedures began within two (2) minutes of the spray application.   (Doc. 32-11, Brown Aff., ¶ 11).   Plaintiff was also taken to a cell in the medical unit so that she could be monitored every fifteen (15) minutes.   (Doc. 32-15, Wynn Aff., ¶ 11).

Plaintiff has provided no evidence in opposition to the Motion for Summary Judgment, only argument.   In Plaintiff's first Response to the Motion for Summary Judgment she alleged that Defendants had not served her with any of the summary judgment documents.   (Doc. 34). Defendants stated that they served an additional copy of the Motion for Summary Judgment on Plaintiff at her most recent address.   (Doc. 36).   Plaintiff also filed a second Response, wherein she responded to the affidavits filed by Defendants.   (Doc. 37).   The Court notes, however, that Plaintiff's Responses were not sworn statements made under penalty of perjury, nor was her Complaint signed under penalty of perjury.   Further, the record does not contain Plaintiff's deposition.   As such, Plaintiff has not provided any evidence to refute Defendants' summary judgment showing.

**Analysis**

Initially, the Court notes that the undisputed evidence shows that Defendants Mitchell and Eady were not involved in the February 15, 2011 incident.   Further, Defendant Walrath's involvement in the January 21, 2011 incident is limited to allegations that she instructed Dr. McMahan to deny Plaintiff medical treatment.   The evidence shows that Plaintiff was treated by Dr. McMahan on January 21, 2011, and he later ordered that Plaintiff be sent to the hospital for a CT scan of her head.   (Doc. 32-6, McMahan Aff., ¶¶ 3, 8).   It is also unrefuted that Defendant Walrath did not order Dr. McMahan to deny Plaintiff treatment.   (*Id.* at ¶ 12; Doc.

10

32-14, Walrath Aff., ¶ 6). As there is no evidence to support the claim that Defendant Walrath ordered Dr. McMahan to deny treatment to Plaintiff, this claim cannot withstand Defendants' Motion for Summary Judgment.

*Excessive Force*

In *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987), the Eleventh Circuit found that a prison officer was justified in his use of force when a defendant was insubordinate in refusing to comply with verbal commands to return to his cell. *Id.* at 1189. The Court noted that the guard's attempt to secure compliance with a lawful order indicated that an effort was made to temper the severity of a forceful response. *Id.* at n. 1. Furthermore, the Court stated that because a verbal confrontation occurred between the inmate and the officer "institutional security interests" were implicated. *Id.* at n. 2.

Much like *Brown*, Plaintiff's insubordination and refusal to follow instructions of several different prison officers in both the January 21 and February 15 incidents show that: (1) there was the need for the application of force, (2) efforts were made to temper the severity of the forceful response, (3) there was a threat to the security of the prison staff and other inmates. *See Hall v. Santa Rosa Correctional Institution*, 403 Fed. Appx. at 481.

On both dates, evidence shows that there was a need for the application of force to compel compliance and accomplish the valid security interest of returning Plaintiff to her cell. *See Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir.1984) ("When an inmate refuse[s] to obey a proper order, [s]he is attempting to assert [her] authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.").

11

Plaintiff would not return to her cell after she was given verbal commands to do so.   Plaintiff also attempted to use physical force to ensure that Defendants could not place Plaintiff in her cell.   Plaintiff attempted to elbow Defendant Mitchell on January 21, 2011, and on February 15, 2011, Plaintiff hit Defendant Walrath several times with her shoe.

Additionally, Defendants attempted to temper the severity of a forceful response by providing several verbal commands to Plaintiff instructing her to return to her cell, by using the smallest amount of force possible, and by providing Plaintiff with medical treatment following the use of force.   While O.C. spray was used during the February 15 incident, the evidence shows that the O.C. spray was applied in order to prevent injury to Plaintiff's arm, which was blocking the closing of her cell door, and was used after Plaintiff had struck Defendant Walrath with her shoe.   The evidence does not show that the O.C. spray was used maliciously; rather, it was used to prevent injuries and control further escalation of the incident. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 739 (11th Cir. 2010) ("pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee" (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002)).   Significantly, there are also no allegations or evidence that Plaintiff was handcuffed at any point during either incident involving the use of force.

With respect to the "extent of the injury" factor, the medical records support Defendants' contention that the force used was necessary to regain control of Plaintiff, and was not excessive. During the January 21 incident, Plaintiff suffered "minor injuries that would resolve on their own even without any medical treatment."   (Doc. 32-6, McMahan Aff., ¶ 5). As a result of the February 15 incident, Plaintiff may have suffered from tightness in her chest

12

following the use of O.C. spray. While Plaintiff complains that she is injured and blind as a result of the incidents, there is no evidence to support her assertions. Thus, Plaintiff's injuries indicate that only a minimal amount of force was used during both incidents.

After analyzing the factors, it is clear that on both dates in question, January 21, 2011 and February 15, 2011, the force used was necessary to regain control of an insubordinate inmate. The undisputed evidence shows that the hands on force used by Defendants was for the purpose of restoring order after Plaintiff was physically aggressive towards prison employees and possibly other inmates, was insubordinate, and refused to comply with several orders to return to her cell. There is no evidence that force was used by Defendants after the officers regained control of Plaintiff, or that force was used maliciously or sadistically to cause Plaintiff harm. Therefore, Defendants are entitled to summary judgment. *See Fischer v. Ellegood*, 238 Fed. Appx. 428, 432 (11th Cir. 2007) (granting summary judgment on excessive force when there was no evidence to show that the defendants used pepper spray with the malicious intention of causing harm to the plaintiff); *McBride v. Rivers*, 170 Fed. Appx. 648, 657 (11th Cir. 2006) (affirming summary judgment when the defendants may have been able to use less force after restraining the plaintiff, but the plaintiff did not produce evidence that the force was malicious and for the purpose of causing harm); *Sanks v. Williams*, 2009 WL 1220621, *4 (S.D. Ga. May 4, 2009) (finding the defendant acted in good faith to restore order when he used force to regain control of an inmate who physically interfered with a search of his cell).

13

**Conclusion**

As Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

*Motion for Appointment of Counsel (Doc. 44)*

On March 12, 2012, Plaintiff filed a Motion for the Appointment of Counsel.  Generally speaking, no right to counsel exists in § 1983 actions.  *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); *Mekdeci v. Merrel Nat'l. Lab.*, 711 F.2d 1510, 1522 n.19 (11th Cir. 1983). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *Branch v. Cole,* 686 F.2d 264, 266 (5th Cir. 1982); *Ulmer v. Chancellor,* 691 F.2d 209 (5th Cir. 1982).

In deciding whether legal counsel should be provided, the Court typically considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented.  *See Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).  Applying the standards set forth in *Holt*, it appears that at the present time, the essential facts and legal doctrines in this case are ascertainable by Plaintiff without the assistance of Court-appointed legal counsel and that the existence of exceptional circumstances has not been shown by Plaintiff.

Furthermore, the undersigned is recommending that Defendants' Motion for Summary

Judgment be granted, which could result in a judgment being entered in favor of Defendants. Accordingly, Plaintiff's Motion for Appointment of Counsel is **DENIED** at this time.

**SO ORDERED AND RECOMMENDED**, this 12th day of June, 2012.

s/ *THOMAS Q. LANGSTAFF*
**UNITED STATES MAGISTRATE JUDGE**

llf